IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>NORTHWESTERN DIVISION</u>

| | |
|---|---|
| GERTRUDE W. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 01-PWG-501-NW |
| | ) |
| INTERNATIONAL PAPER COMPANY, | ) |
| | ) |
| Defendant. | ) |

<u>MEMORANDUM OF OPINION</u>

On February 26, 2001 Gertrude W. Williams, the plaintiff, filed a complaint against International Paper Company, her employer, alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34. The parties have consented to the magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c). This matter is before the magistrate judge on defendant's motion for summary judgment.

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of

32

his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed. Ms. Williams was employed by International Paper Company ("IP") or a predecessor company from September 1, 1976, until February 28, 2001. (Williams deposition, pp.19-20,21-22). From 1979 until September, 1998, she worked in the Materials Department at IP's mill in Courtland, Alabama. (Williams deposition, pp.22-24). The Materials Department was eliminated in September 1998 in a downsizing or restructuring (Williams deposition, pp. 45,47) at which time eight employees, including Ms. Williams, lost their positions in the department. (Williams deposition, pp. 49). The seven other employees were men and were younger than the Ms. Williams. (Williams deposition, pp. 51). The displacement and reassignment of all eight employees in the department–including Ms. Williams--were carried out in compliance

2

with a collective bargaining agreement between IP and the union representing its hourly employees ("the Agreement"). (Williams deposition, pp. 66-69 and Exhibit 2; *see also*, Fuller affidavit, Exhibit 1).

After the elimination of the Materials Department, Ms. Williams was assigned to work as a Reserve at the #30 and #31 paper machines (Williams deposition, pp. 27, 68-69) where she remained from September 1998, to January, 1999. (Williams deposition, pp. 202). She alleges that during this four-month period she was discriminatorily denied training on the paper machines and was harassed. (Williams deposition, pp. 88-89, 204).

Ms. Williams then bid into a Reserve job in the mill's "cut-size" department. (Williams deposition, pp. 28). She does not contend that she was denied any training or was otherwise treated in a discriminatory manner after she moved to the cut-size department. (Williams deposition, pp. 125-26).

Ms. Williams filed her first charge of discrimination on or about June 23, 1999 claiming that she was discriminated against based on her age.[1] Based on the advice of officials, she did not claim any discrimination based on sex (Williams deposition, pp. 184, Exhibit 8) despite believing when she filed the charge that she had been a victim of sex discrimination (Williams deposition, pp. 186, 187, 198). In April 2000 she received a right-to-sue notice from the EEOC on her June 23, 1999 charge. (Williams deposition, pp. 193-94, Exhibit 9). Ms. Williams understood from the notice that she was required to file within ninety days after receiving the notice or her right

---

[1] In her charge, she alleged that the cut size department took over the material department and she was given the lowest position, as floor sweeper, despite her seniority. (Exhibit 8). This allegation is not raised in the present lawsuit.

3

to sue would be lost. (Williams deposition, pp. 195, Exhibit 9). She decided not to file suit on the first charge based on the advice of union officials. (Williams deposition, pp. 195-96).

As a basis for both her discrimination claim and her retaliation claim, Ms. Williams complains that she was not placed into one of two "Recycling Cores" positions that were created and became open in the Fall of 1999. (Williams deposition, pp. 72). Pursuant to the Agreement, employees formerly in the Material Handling line of progression were offered the positions in the reverse order of layoff–that is, employees with more mill seniority were offered the positions first. (Fuller affidavit, ¶ 20). Two former Materials Department employees, Larry Watkins and Tom Blevins, accepted the positions before the Ms. Williams was reached. (Fuller affidavit, ¶ 21). Watkins and Blevins both had more mill seniority than the Ms. Williams, having begun employment at IP's predecessor at the Courtland Mill on June 24, 1975, more than a year before the she started working there on September 1, 1976. (Fuller affidavit, ¶ 21, Williams deposition, pp. 78). Accordingly, their assignment to the Recycling Cores positions complied with the Agreement.

Ms. Williams also complains that she was not placed into either of the two train crew positions that were vacated by Watkins and Blevins in the Fall of 1999 when they took the Recycling Cores positions. (Williams deposition, pp. 177). The two train crew positions were filled by Danny Davis and Joe Crumpton. (Williams deposition, pp. 183). Davis and Crumpton had been bumped out of train crew positions by more senior Maintenance/Materials Operating Group employees during the September, 1998, reorganization and were returning to their former line of progression. (Fuller affidavit, ¶ 24; Williams deposition, p.183). Even though the Ms. Williams had more mill seniority than Davis and Crumpton, she was not eligible for the train crew positions because Transportation was not her former line of progression. (Fuller affidavit, ¶¶ 23-25). Recall

4

is not to *any* department within the displaced employee's former operating group, but is specific to the employee's former *line of progression*, which, for Ms. Williams, was Material Handling, not Transportation. (Fuller affidavit, ¶ 23). The filling of these positions was carried out in accordance with the Agreement.

As another basis for her retaliation claim, Ms. Williams complains that she was issued a reprimand on August 4, 2000. (Williams deposition, pp. 205-06, Exhibit 13). She received the reprimand because on July 19, 2000 she was called as "first contact" to report to work to fill a vacancy but failed to go in. (Williams deposition, pp. 207-08, Exhibit 13). As the Ms. Williams describes it:

> If they call you and you answer your phone, if you can go in or not, you're charged with it. You've got to go in, regardless. If you've got a death in the family, you've still got to go. So I couldn't go. I had already made a dentist appointment for like six months ahead, and I couldn't go; so when I went in the next day, they reprimanded me.

(Williams deposition, pp. 207-08).

This process for filling unknown vacancies is set forth in the Agreement. (Fuller affidavit, p.27, Exhibit 1, at 15). Ms. Williams agrees that if she was the first contact, she was required to come in, and her dental appointment would not be an excuse for her or any other employee. (Williams deposition, pp. 211-12).

However, Ms. Williams testified that she believes that other employees who were listed ahead of her on the "first contact" list should have been called before her but were not. (Williams deposition, pp. 208, Exhibit 14). She bases this belief on the fact that the notations next to the names before hers indicate that those employees were not home but instead an answering

5

machine was reached. (Williams deposition, pp. 213-14, Exhibit 14). She surmises that the "answering machine" notation was falsely placed next to the other employees' names when the caller, Ray Owens, in fact reached the employees on the telephone but wanted to allow those employees to avoid coming in without getting written up. (Williams deposition, pp. 210,213-14). Owens testified that the notations on the "first contact" list accurately reflect the result of telephone calls that were placed to the employees. (Owens affidavit at ¶ 5). If "answering machine" is noted on the list, then Owens in fact reached an answering machine when he called the employee's contact number. (Owens affidavit, ¶ 5). Ms. Williams has not rebutted Owens's testimony.

In any event, Owens had no knowledge at the time of the incident that Ms. Williams had filed a charge of discrimination. (Owens affidavit, ¶ 6; *see also* Williams deposition, pp.214-15). Owens reported the conduct to his supervisors, including Gary Pugh, who issued the reprimand. (Owens affidavit, ¶ 5). Ms. Williams has not presented any evidence that either Owens or Pugh had any knowledge about her charge when the reprimand was issued. Nothing happened to the Ms. Williams as a result of her receiving the reprimand. (Williams deposition, pp. 214).

Ms. Williams filed her second charge of discrimination on or about September 19, 2000 claiming both age and sex discrimination. (Williams deposition, pp. 196-97, Exhibit 10). She received a right-to-sue notice dated November 21, 2000 from the EEOC on the second charge (Williams deposition, pp. 201, Exhibit 12) shortly after November 21, 2000.[2/]

All of Ms. Williams's discrimination claims–whether based on age or sex–are barred under the applicable statutes of limitations because they arise out of acts that occurred more than 180 days before the September 19, 2000, charge of discrimination. Both Title VII and the ADEA require

---

2/    Defendant has not argued that this action was not timely filed.

a complainant to bring a charge of discrimination within 180 days after the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); 28 U.S.C. § 626(d)(1). "If an employee fails to file an EEOC charge before the 180-day limitations period elapses, his or her subsequent lawsuit is procedurally barred and must be dismissed for failure to exhaust his or her administrative remedies." *Brewer v. State of Alabama*, 111 F. Supp.2d 1197, 1204 (M.D. Ala. 2000).[3/] The date which fell 180 days before the filing of the September 19, 2000, charge was March 23, 2000. Thus, Ms. Williams is barred from raising any discrimination claims arising out of acts that occurred before March 23, 2000, and all of the allegedly discriminatory acts about which she complains occurred before that date, including (1) her failure to receive training between September, 1998, and January, 1999, (2) the "harassment" that allegedly occurred between September, 1998, and January, 1999, and (3) her failure to be reassigned to particular positions in the Fall of 1999.[4/]

The 180-day limitations period functions like a statute of limitations and therefore is subject to the doctrine of equitable tolling. *Brewer*, 111 F. Supp.2d at 1204. "Under equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that she was discriminated against. A plaintiff who asserts the applicability of equitable tolling bears the burden of proving that it is appropriate." *Carter v. West Publishing Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000) (citing *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 and n.19 (11th Cir. 1993)). Even if Ms. Williams "did not know all the facts regarding the mechanisms of this discrimination," equitable tolling is not appropriate if she nevertheless

---

[3/]  Because similar legal principles govern claims under both Title VII and the ADEA, cases construing Title VII are applicable to claims arising under the ADA, and vice versa. *See Bush v. Liberty National Life Ins.*, 12 F. Supp.2d 1251, 1255 n.3 (M.D. Ala. 1998).

[4/]  None of these acts were the subject of the first EEOC charge. (Exhibit 8). These acts were all apparently included in the second EEOC charge. (Exhibits 10 and 11).

believed she was a victim of discrimination. *Ross*, 980 F.2d at 660. She was clearly aware of possible age and sex discrimination claims long before September 19, 2000 as evidenced by her June 23, 1999 age discrimination charge and her admission at deposition that she felt as of June 23, 1999, that she had been discriminated against based on her sex. (*See* Williams deposition, pp. 186).

Ms. Williams's reliance on the advice of union officials provides no basis for equitable tolling. The only circumstances in which the representations of third parties might justify equitable tolling are (1) where the plaintiff was lulled into inaction or into pursuing other relief by officials of the federal agencies involved, including the EEOC, (2) where the defendant had concealed facts regarding the Title VII claim, and (3) where the plaintiff was actively misled by the defendant concerning his rights under Title VII. *Manning v. Carlin,* 786 F.2d 1108, 1109 (11th Cir. 1986); *Miller v. Marsh*, 766 F.2d 490, 493 (11th Cir. 1985). Because the union officials upon whom Ms. Williams allegedly relied were not representatives of either the EEOC or IP, their advice to her cannot establish a basis for equitable tolling. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County v. Brown*, 466 U.S. 147, 151 (1984).

Both Title VII and the ADEA provide that an employer may not discriminate against an employee because the employee opposed a practice made unlawful by those statutes or filed a charge under the statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Ms. Williams's retaliation claim is based upon two actions that the she contends were a result of her filing a charge of discrimination: (1) her failure to receive the open positions in the Fall of 1999 and (2) her receiving a written reprimand on August 4, 2000, for refusing to come in to work after being the "first contact" to fill a temporary vacancy. To establish a *prima facie* case of retaliation, a plaintiff must prove "(1)

8

she participated in an activity protected by [statute], (2) she suffered an adverse employment action, and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Pipkins v. City of Temple Terrace,* Fla., 267 F.3d 1197, 1200 (11th Cir. 2000). To establish a causal connection, the plaintiff must prove that the protected activity and the adverse employment action were related. *Clover v. Total Systems Service,* Inc., 176 F.3d 1346, 1354 (11th Cir. 1999) *quoting Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11the Cir. 1993). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Id.*

With regard to the assignment of other employees to the open positions in the Fall of 1999, IP has presented unrebutted evidence that the assignments to those positions were made in accordance with the Agreement between IP and the union and therefore the retaliation claims based on the filling of those positions must fail.

With regard to the written reprimand, Ms. Williams's retaliation claim fails because the written reprimand did not constitute adverse employment action. "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). She testified that she did not lose pay as a result of the reprimand, that nothing happened to her as a result of the reprimand other than her receiving it, and that it did not affect her employment in any way. (Williams deposition, p. 214). Because Ms. Williams cannot adduce sufficient evidence from the record from which a jury could find that the reprimand constituted adverse employment action, IP is entitled to judgment as a matter of law on the retaliation claim arising out of the issuance of the reprimand.

Based on the foregoing the defendant's motion for summary judgment is due to be GRANTED. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 8th day of August, 2002.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE